**13 CIV 6530**

JUDGE CASTEL

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Andrew P. Kimble
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

RECEIVED SEP 17 2013 U.S.D.C. S.D. N.Y. CASHIERS

---

MELODY FLYNN and MARTINA ANTOINETTE DE TRUFF, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    -against-

NEW YORK DOLLS GENTLEMEN'S CLUB a/k/a 59 MURRAY ENTERPRISES, INC., PRIVATE EYES GENTLEMEN'S CLUB a/k/a AAM HOLDING CORP, THREE B's HOSPITALITY GROUP a/k/a XYZ CORP., BARRY LIPSITZ, and BARRY LIPSITZ, JR.,

        Defendants.

---

**CLASS ACTION COMPLAINT**

---

Plaintiffs Melody Flynn and Martina Antoinette de Truff (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This case is about the workplace rights of entertainers (dancers) at New York Dolls Gentlemen's Club ("New York Dolls"), Private Eyes Gentlemen's Club ("Private Eyes"), and Flashdancers Gentlemen's Club ("Flashdancers"), three adult clubs located at 59 Murray Street, 320 West 45th Street, and 1674 Broadway, respectively, in New York City (collectively, the "Clubs").

2.      Adult entertainers in New York City, including Plaintiffs and their former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners.  *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U, J. Gender Soc. Pol'y & L. 465, 466 (1999); *see also* Margot Rutman, *Symposium: Exotic Dancers Employment Law Regulations*, 8 Temp. Pol. & Civ. Rts. L. Rev, 515, 527-28 (Spring 1999); Carrie Benson Fischer, *Employee Rights in Sex Work: The Struggle for Dancers' Rights as Employees*, 14 L, & Ineq. J. 521 (June 1996).

3.      Accordingly, adult clubs such as the Clubs are well-positioned to take advantage of entertainers and deny them basic workplace rights.

4.      Over the years, entertainers at adult clubs like the Clubs have made some strides by winning recognition as employees and otherwise protecting their workplace rights, including in cases prosecuted by the United States Department of Labor.  *See, e.g., Reich v. Circle C Invs.*, 998 F.2d 324, 326-29 (5th Cir. 1993) (upholding trial court's determination that adult club dancers are employees within the meaning of the Fair Labor Standards Act); *In re Penthouse Executive Club Comp. Litig.*, Master File No. 10 Civ. 1145, 2013 WL 1828598, at *3-5 (S.D.N.Y. Apr. 30, 2013) (conditionally certifying Rule 23 settlement class of entertainers at New York City adult night club and authorizing the distribution of settlement notice to class members); *Diaz v. Scores Holding Co.*, No. 07 Civ. 8718, 2008 WL 7863502, at *4-5 (S.D.N.Y. May 9, 2008) (conditionally certifying Fair Labor Standards Act collective of entertainers and other workers at New York City adult night club and authorizing notice to putative members of the collective); *Whiting v. W & R Corp.*, No. 2:03-0509, 2005 U.S. Dist. LEXIS 34008, at *6-9 (S.D. W.Va. Apr. 18, 2005) (denying defendant's motion for summary judgment in wage and hour case brought by dancer at exotic dance club); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1347-54 (M.D. Fla. 1997) (holding that

dancer at adult night club was employee for purposes of the Fair Labor Standards Act); *Reich v. Priba Corp.*, 890 F.Supp. 586, 594 (N.D. Tex. 1995) (after bench trial, finding dancers at adult night club were employees for purposes of the Fair Labor Standards Act in case brought by the Department of Labor); *Donovan v. Tavern Talent & Placements, Inc.*, Civ. No. 84-F-401, 1986 U.S. Dist. LEXIS 30955, at *6-7 (D. Colo. Jan. 8, 1986) (holding that night club operators employed dancers and violated their rights as tipped employees); *Chaves v. King Arthur's Lounge, Inc.*, No. 07-2505, 2009 Mass. Super, LEXIS 298, at *19-20 (Mass. Super. Ct. July 30, 2009) (holding defendant bar/lounge misclassified exotic dancers as independent contractors under Massachusetts law); *Smith v. Tyad, Inc.*, 209 P.3d 228, 231-34 (Mont. 2009) (upholding state wage enforcement agency's finding that exotic dancers are employees and upholding agency's authority to deem deduction of "stage fees" unlawful requiring reimbursement).

5.     In fact, on September 10, 2013, a Southern District court granted summary judgment to a certified class/collective of entertainers at a New York City adult club with respect to the dancers' minimum wage and unlawful deductions claims.  *See Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043, 2013 WL 4822199, at *34 (S.D.N.Y. Sept. 10, 2013).  In so ruling, Judge Engelmayer specifically found that the entertainers were employees of the club – under both federal and New York State law – "as a matter of law." *Id.* at 15, 19, 34.

6.     Nevertheless, the adult entertainment industry in New York City and elsewhere remains largely out of compliance with basic worker protection statutes.

7.     The Clubs, three popular New York City adult clubs, are no exception.  Despite exerting significant control over entertainers, they misclassify dancers as independent contractors, and deprive them of their rights under federal and New York State wage and hour laws, including their right to be paid minimum wages, their right to be paid overtime compensation, their right to be

paid spread-of-hours pay, their right to keep customer gratuities they earn, their right to work without paying "house fees," and their right to be reimbursed for uniform-related expenses. In fact, entertainers at the Clubs do not receive any hourly wages whatsoever.

8.     This is not the first time that the Clubs' have been the subject of a federal lawsuit seeking to enforce entertainers' rights to recover lawfully earned wages. *See Han v. Jay-Jay Cabaret, Inc. et al*, No. 11 Civ. 2072 (S.D.N.Y. filed Mar. 25, 2011); *Naraine v. AAM Holding Corp. et al,* No. 10 Civ. 8614 (S.D.N.Y. filed Nov. 15, 2010). Consequently, the Clubs have been on notice of the illegality of their compensation practices since at least November 15, 2010.

9.     This lawsuit seeks to force the Clubs to grant entertainers the basic rights of employees under federal and New York State law, and correspondingly pay entertainers all of the wages they earn and allow them to keep all of the tips they receive, as federal and state law require.

10.     The Clubs are owned and operated by 59 Murray Enterprises, Inc., AAM Holding Corp., XYZ Corp. d/b/a Three B's Hospitality Group, Barry Lipsitz, and Barry Lipsitz, Jr. (collectively, "Defendants"). Defendants operate as a single integrated enterprise that jointly employs entertainers at the Clubs.

11.     Throughout the relevant period, Defendants' integrated enterprise has maintained a strong, interconnected advertising, branding, internet, and social media presence. For example, the website for each Club contains a "Locations" section, which provides the names, addresses and phone numbers of all three Clubs, as well as a link to each Club's individual website. Individuals who follow the Twitter or YouTube links on any of the three Clubs' websites are also directed solely to Flashdancer's Twitter or YouTube accounts.

12.     The Clubs are further connected through Three B's Hospitality Group ("Three B's Hospitality"), whose Facebook page identifies itself as a "New York City based nightlife and restaurant group" consisting of Flashdancers, New York Dolls, Private Eyes, and Mr. Robata (a Japanese grill and sushi bar located within Flashdancers).  In fact, Three B's Hospitality's Twitter feed not only posts information about each of the three Clubs, it refers to the Clubs as "SISTER CLUBS," "OUR 3 LOCATIONS IN NYC," and "Manhattan's #1 gentlemen's club chain." Further, Three B's Hospitality's Instagram page – which can be accessed by following the Instagram link on any of the three Clubs' websites – displays photographs relating to each of the Clubs, including a picture of a business card featuring all four Three B's Hospitality establishments.

13.     On their websites, the Clubs attribute their success to: "Over two hundred international entertainers, as approachable as they are alluring" (New York Dolls); "[H]undreds of exotic entertainers from around the world" (Private Eyes); and "[O]ver 350 red hot entertainers, from all six continents, competing to be your IT girl" (Flashdancers).  The Clubs, however, appear not to appreciate the workers who allow them to make such boasts.

14.     The Clubs fail to pay entertainers the statutory minimum hourly wage, premium overtime compensation for all hours they work in excess of 40 hours per workweek, and spread-of-hours pay when the length of their workday was greater than 10 hours.

15.     The Clubs collect unlawful house fees from entertainers for each shift that they work ranging from $50.00 to $105.00, depending on the shift.  The Clubs also require entertainers to pay a fee/fine if they are late or if they are unable to work a scheduled shift.

16.     The Clubs prohibit entertainers from keeping all of the tips that they earn, by requiring entertainers to share their tips with workers who do not provide customer service, such as "House Moms," DJs, and private room hostesses.

17.    The Clubs encourage customers to tip entertainers using club scrip called "Dance Dollars," which customers purchase from the club, to use instead of cash.  When an entertainer receives a tip from a customer in Dance Dollars, the Clubs deduct and retain a portion of the tip when the entertainer exchanges the Dance Dollars for cash.  In that regard, entertainers receive only $16.00 in cash for every $20.00 in Dance Dollars they exchange.  Consequently, customers who believe they are tipping entertainers a certain amount are actually tipping them less.

18.    The Clubs require entertainers to purchase club-approved uniforms, often directly from the Clubs, and do not reimburse them for the cost of the uniforms or for their maintenance and upkeep.

19.    Plaintiffs bring this action on behalf of themselves and all similarly situated current and former entertainers who elect to opt-in to this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

20.    Plaintiffs also bring this action on behalf of themselves and all similarly situated current and former entertainers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiffs

#### Melody Flynn

21.     Melody Flynn ("Flynn") is an adult individual who is a resident of Brooklyn, New York.

22.     Flynn was employed by Defendants as an entertainer at the Clubs from in or around January 2013 to August 2013.  During this period, Flynn performed work at New York Dolls and Private Eyes.

23.     Flynn is a covered employee within the meaning of the FLSA and the NYLL.

24.     A written consent form for Flynn is being filed with this Class Action Complaint.

#### Martina Antoinette de Truff

25.     Martina Antoinette de Truff ("De Truff") is an adult individual who is a resident of New York, New York.

26.     De Truff was employed by Defendants as an entertainer at the Clubs from in or around February 2013 to August 8, 2013.  During this period, De Truff performed work at New York Dolls and Private Eyes.

27.     De Truff is a covered employee within the meaning of the FLSA and the NYLL.

28.     A written consent form for De Truff is being filed with this Class Action Complaint.

### Defendants

29.     Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant.

30.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

31.     Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

32.     Defendants' operations are interrelated and unified.

33.     During all relevant times, the Clubs shared a common management and were centrally controlled and/or owned by Defendants.

34.     During all relevant times, Defendants centrally controlled the labor relations of the Clubs.

35.     During all relevant times, Defendants allowed employees to freely transfer or be shared by and between the Clubs, without retraining.

36.     During all relevant times, Defendants exercised operational control over the management of the Clubs, including, but not limited to, control over: compensation of workers; food, drink and entertainment quality; customer payment methods; recruiting and training of workers; recruiting and training of managers; architectural and interior design; sound, light and video design; sales and marketing programs; public relations programs; promotional services; advertising campaigns; hospitality training; appearance and conduct standards for workers; and inventory controls.

**New York Dolls Gentlemen's Club a/k/a 59 Murray Enterprises, Inc.**

37.     Together with the other Defendants, New York Dolls Gentlemen's Club a/k/a 59 Murray Enterprises, Inc. ("59 Murray") has owned and/or operated the Clubs during the relevant period.

38.     59 Murray is a domestic business corporation organized and existing under the laws of New York.

39.     Upon information and belief, 59 Murray's principal executive office is located at 59 Murray Street, New York, New York 10007, the address of New York Dolls.

40:     59 Murray is the "Premises Name" that appears on the New York State Liquor Authority license for the premises doing business as "NEW YORK DOLLS," located at "59 MURRAY STREET, NEW YORK, NY 10007."

41.     59 Murray is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

42.     At all relevant times, 59 Murray has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

43.     59 Murray applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

44.     Upon information and belief, at all relevant times, 59 Murray's annual gross volume of sales made or business done was not less than $500,000.00.

**Private Eyes Gentlemen's Club a/k/a AAM Holding Corp.**

45.     Together with the other Defendants, Private Eyes Gentlemen's Club a/k/a AAM Holding Corp. ("AAM") has owned and/or operated the Clubs during the relevant period.

46.     AAM is a domestic business corporation organized and existing under the laws of New York.

47.     Upon information and belief, AAM's principal executive office is located at 320 West 45th Street, New York, New York 10036, the address of Private Eyes.

48.    AAM is the "Premises Name" that appears on the New York State Liquor Authority license for the premises doing business as "PRIVATE EYES," located at "316 318 320 WEST 45TH STREET, NEW YORK, NY 10036."

49.    AAM is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

50.    At all relevant times, AAM has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

51.    AAM applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

52.    Upon information and belief, at all relevant times, AAM's annual gross volume of sales made or business done was not less than $500,000.00.

**Three B's Hospitality Group a/k/a XYZ Corp.**

53.    Together with the other Defendants, Three B's Hospitality Group a/k/a XYZ Corp. ("Three B's Hospitality") has owned and/or operated the Clubs during the relevant period.

54.    Upon information and belief, Three B's Hospitality is a domestic business corporation organized and existing under the laws of New York.

55.    Upon information and belief, Three B's Hospitality's principal executive office is located at 1674 Broadway, New York, New York 10019, the address of Flashdancers.

56.    According to its Facebook page, Three B's Hospitality is a "New York City based nightlife and restaurant group" consisting of Flashdancers, New York Dolls, Private Eyes, and Mr. Robata (a Japanese grill and sushi bar located within Flashdancers).

57.     Three B's Hospitality's Twitter feed not only posts information about each of the Clubs, but it refers to the three clubs as "SISTER CLUBS," "OUR 3 LOCATIONS IN NYC," and "Manhattan's #1 gentlemen's club chain."

58.     Three B's Hospitality's Instagram page displays photographs relating to each of the Clubs, including a picture of a business card featuring all four Three B's Hospitality Group establishments.  This page can be accessed by following the Instagram link on any of the three Clubs' websites.

59.     Three B's Hospitality is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

60.     At all relevant times, Three B's Hospitality has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

61.     Three B's Hospitality applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

62.     Upon information and belief, at all relevant times, Three B's Hospitality's annual gross volume of sales made or business done was not less than $500,000.00.

**Barry Lipsitz**

63.     Upon information and belief, Barry Lipsitz is a resident of the State of New York.

64.     Barry Lipsitz is an owner of the Clubs.

65.     Barry Lipsitz is identified by the New York State Department of State – Division of Corporations as the Chief Executive Officer of 59 Murray.

66.     On his LinkedIn profile, Barry Lipsitz lists his current company as "3b hospitality group," and identifies himself as "OWNER REST NITE CLUBS."

67.     Barry Lipsitz is identified by the New York State Liquor Authority as a "Principal" for the premises doing business as "NEW YORK DOLLS," located at "59 MURRAY STREET, NEW YORK, NY 10007," and "MR ROBATA," located at "1674 BROADWAY STORE # 3, NEW YORK, NY 10019," Three B's Hospitality establishments.

68.     At all relevant times, Barry Lipsitz has had the power over personnel decisions at the Clubs, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

69.     At all relevant times, Barry Lipsitz has had power over payroll decisions at the Clubs, including the power to retain time and/or wage records.

70.     At all relevant times, Barry Lipsitz has been actively involved in managing the day to day operations of the Clubs.

71.     At all relevant times, Barry Lipsitz has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

72.     At all relevant times, Barry Lipsitz has had the power to transfer the assets and/or liabilities of the Clubs.

73.     At all relevant times, Barry Lipsitz has had the power to declare bankruptcy on behalf of the Clubs.

74.     At all relevant times, Barry Lipsitz has had the power to enter into contracts on behalf of the Clubs.

75.     At all relevant times, Barry Lipsitz has had the power to close, shut down, and/or sell the Clubs.

76.     Barry Lipsitz is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Barry Lipsitz, Jr.**

77.     Upon information and belief, Barry Lipsitz, Jr. is a resident of the State of New York.

78.     Barry Lipsitz, Jr. is an owner of the Clubs.

79.     At all relevant times, Barry Lipsitz, Jr. has had the power over personnel decisions at the Clubs, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.  In fact, Flynn auditioned for Barry Lipsitz, Jr. at New York Dolls, and both Plaintiffs recall Barry Lipsitz, Jr. terminating entertainers from New York Dolls.

80.     At all relevant times, Barry Lipsitz, Jr. has had power over payroll decisions at the Clubs, including the power to retain time and/or wage records.

81.     At all relevant times, Barry Lipsitz, Jr. has been actively involved in managing the day to day operations of the Clubs.

82.     At all relevant times, Barry Lipsitz, Jr. has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

83.     At all relevant times, Barry Lipsitz, Jr. has had the power to transfer the assets and/or liabilities of the Clubs.

84.     At all relevant times, Barry Lipsitz, Jr. has had the power to declare bankruptcy on behalf of the Clubs.

85.     At all relevant times, Barry Lipsitz, Jr. has had the power to enter into contracts on behalf of the Clubs.

86.     At all relevant times, Barry Lipsitz, Jr. has had the power to close, shut down, and/or sell the Clubs.

87.     Barry Lipsitz, Jr. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

88.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

89.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

90.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

91.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who work or have worked as entertainers at the Clubs in New York, who elect to opt-in to this action (the "FLSA Collective").

93.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

94.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid minimum wages for all hours worked or the appropriate premium overtime compensation for all hours worked beyond 40 per workweek.

95.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

96.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

(a)     willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, minimum wages for all hours worked and the appropriate premium overtime wages for all hours worked in excess of 40 hours in a workweek; and

(b)     willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

97.     Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying Plaintiffs and the FLSA Collective as independent contractors, and failing to properly compensate Plaintiffs and the FLSA Collective for the hours they work.

98.     Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective minimum wage for all of the hours they worked.

99.     Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for hours worked in excess of 40 hours per week.

100.    Plaintiffs and the FLSA Collective perform or performed the same primary duties.

101.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

102.    There are many similarly situated current and former entertainers who have been denied minimum wage and overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

103.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

104.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

105.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as entertainers / dancers at the Clubs in New York between September 17, 2007 and the date of final judgment in this matter (the "Rule 23 Class").

106.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

107.    The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

108.    Upon information and belief, the size of the Rule 23 Class is at least 100 individuals.  Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

109.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

110.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)   whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

(b)   whether Defendants failed to pay Plaintiffs and the Rule 23 Class minimum wages for all of the hours they worked;

(c)   whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

(d)   whether Defendants failed to provide Plaintiffs and the Rule 23 Class with spread-of-hours pay when the length of their workday was greater than 10 hours;

(e)   whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips paid by customers that were intended for Plaintiffs and the Rule 23 Class, and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class;

(f)   whether Defendants distributed or retained a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(g)   whether Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class, including, but not limited to, deductions for house fees, late fees, missed work fees, Dance Dollar cash out fees, and mandatory tip outs, in violation of the NYLL;

(h)   whether Defendants failed to reimburse Plaintiffs and the Rule 23 Class for uniform-related expenses in violation of the NYLL;

(i)   whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class, and other records required by the NYLL;

(j)   whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with wage notices, as required by the NYLL;

(k)   whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with accurate statements of wages, hours worked, rates paid, and gross wages, as required by the NYLL;

(l)   whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(m)   the nature and extent of class-wide injury and the measure of damages for those injuries.

111.    The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants as entertainers at the Clubs in New York.  Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be properly compensated for all hours worked, to be paid spread-of-hours pay, to retain customer tips, to not have unlawful deductions made from their wages, and to be reimbursed for uniform-related expenses.  Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

112.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class.  Plaintiffs recognize that any resolution of a class action must be in the best interest of the class.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between Plaintiffs and the Rule 23 members.

113.    In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

114.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.   The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures.   Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.   The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.   In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

115.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## **CLASS-WIDE FACTUAL ALLEGATIONS**

116.     Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively "Class Members") have been victims of a common policy and plan perpetrated by Defendants that have violated their rights under the FLSA and the NYLL by denying them a minimum wage, proper overtime compensation, and tips that they earned.

117.     At all times, Defendants' unlawful conduct, policies, and patterns or practices described in this Class Action Complaint have been willful.

### **Wage and Hour Violations**

118.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and Class Members by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL as described in this Class Action Complaint.   This pattern, practice, and/or policy includes, but is not limited to the following:

(a)   failing to pay Plaintiffs and Class Members at least the applicable minimum hourly wage rate free and clear under the FLSA and the NYLL for all hours worked;

(b)   failing to pay Plaintiffs and Class Members proper overtime compensation for the hours they worked in excess of 40 hours in a workweek;

(c)   failing to pay Plaintiffs and Class Members spread-of hours pay for shifts worked of 10 hours or more;

(d)   unlawfully demanding, retaining, and receiving portions of the tips that Plaintiffs and Class Members earned;

(e)   requiring Plaintiffs and the Class Members to share their tips with management, agents of management, and/or other employees who are not busboys or similar employees, and/or who are not in customarily tipped positions, and/or who have no, or virtually no, customer service duties;

(f)   refusing to exchange Dance Dollars that customers used to tip Plaintiffs and Class Members for cash;

(g)   making deductions from Plaintiffs' and Class Members' wages, including but not limited to, deductions for house fees, late fees, missed work fees, Dance Dollar cash out fees, and mandatory tip outs;

(h)   failing to reimburse Plaintiffs and Class Members for their uniform expenses, including the cost of laundering and maintaining their uniforms;

(i)   failing to pay Plaintiffs and the Class Members the NYLL statutory rate for laundering and maintenance of their uniforms;

(j)   failing to keep accurate and adequate records of tips and wages paid to Plaintiffs and Class Members, deductions taken from their tips and wages, allowances or other credits taken by Defendants, and hours worked by Plaintiffs and Class Members as required by the FLSA and the NYLL;

(k)   failing to comply with the posting and/or notice requirements of the FLSA and the NYLL;

119.   Upon information and belief, Defendants' unlawful conduct described in this Class Action Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

120.   Defendants' unlawful conduct has been widespread, repeated, and consistent.

121.    Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and Class Members.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the law with respect to the compensation of Plaintiffs and Class Members.

122.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

123.    Defendants' deceptive conduct – including, but not limited to, taking steps to lead Plaintiffs and Class Members to believe that they were independent contractors and not employees – prevented Plaintiffs and Class Members from discovering or asserting their claims any earlier than they did.

**Supervision and Control of Plaintiffs and Class Members**

124.    Defendants have had the power to hire and fire Plaintiffs and Class Members.

125.    Defendants have supervised and controlled Plaintiffs and Class Members' schedules and conditions of work.

126.    Defendants have implemented rules that governed Plaintiffs' and Class Members' working conditions.

127.    Among other things, Defendants have required Plaintiffs and Class Members to:

(a)    work a minimum of three shifts per week;

(b)    work on certain days of the weeks and at certain times according to a schedule set by the Clubs;

(c)    pay a fee/fine if they arrive late to work or do not work a scheduled shift;

(d)    purchase uniforms approved by the Clubs, often directly from the Clubs;

(e)    wear certain types of uniforms and hairstyles for day shifts and night shifts;

(f)    remain dressed in their uniforms until the end of their shifts;

(g)    maintain at least three sets of uniforms – two gowns and one swimsuit – for each shift worked;

(h)    dance on stage for at least three songs in a row and remain on stage until the next entertainer arrives;

(i)    share tips with other employees, such as the House Mom, DJ, and private room hostesses;

(j)    pay house fees; and

(k)    pay a cash out fee to exchange Dance Dollars into cash.

128.    Among other things, Defendants prohibited Plaintiffs and Class Members from:

(a)    wearing certain types of uniforms or hairstyles during certain shifts;

(b)    changing into street clothes before the end of their shift;

(c)    using glitter and/or heavy perfume;

(d)    wearing the same uniform multiple times in a week;

(e)    carrying cell phones on the dance floor;

(f)    chewing gum while at work;

(g)    carrying drinks while walking through the club;

(h)    leaving the stage before the next entertainer arrived;

(i)    refusing drink offers from customers;

(j)    discussing the club's operating procedures with customers, including the terms of their compensation or payment; and

(k)    leaving the clubs with customers.

129.    Defendants required Plaintiffs and Class Members to sign and return alleged independent contractor agreements.

130.    Defendants required Plaintiffs and Class Members to sign and return copies of rules, guidelines, and tax reporting documents.

131.    Defendants determined the rate and method of payment of Plaintiffs and Class Members, including but not limited to the percentage of tips that the Clubs would retain and the fact that the Plaintiffs and Class Members would not receive any minimum wages.

132.    Defendants maintained employment records for Plaintiffs and Class Members.

### PLAINTIFFS' FACTUAL ALLEGATIONS

133.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Melody Flynn**

134.    Defendants did not pay Flynn the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

135.    Defendants suffered or permitted Flynn to work over 40 hours per week as an entertainer, up to a maximum of approximately 50 hours per week.  During such workweeks, Defendants did not compensate Flynn at time and one-half the full minimum wage rate for all of the overtime hours she worked.

136.    Defendants did not pay Flynn one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

137.    Defendants did not allow Flynn to retain all of the tips she earned.

138.    Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Flynn earned.

139.    Defendants unlawfully redistributed part of Flynn's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms," DJs, and private room hostesses.

- 23 -

140.    Defendants made unlawful deductions from Flynn's wages, including, but not limited to, deductions for house fees, late fees/fines, missed work fees/fines, Dance Dollar cash out fees, and mandatory tip outs.

141.    Defendants required Flynn to purchase and wear a uniform that: (a) may not be worn as part of Flynn's ordinary wardrobe; (b) is not made of "wash and wear" materials; (c) cannot be routinely washed and dried with other personal garments; and (d) requires ironing, dry cleaning, daily washing, and/or other special treatment.  Defendants did not launder and/or maintain Flynn's mandatory uniform, pay Flynn the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse Flynn for uniform-related expenses.

142.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Flynn.

143.    Defendants failed to furnish Flynn with annual wage notices.

144.    Defendants failed to furnish Flynn with accurate statements of wages, hours worked, rates paid, and gross wages.

**Martina Antoinette de Truff**

145.    Defendants did not pay De Truff the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

146.    Defendants suffered or permitted De Truff to work over 40 hours per week as an entertainer, up to a maximum of approximately 50 hours per week.  During such workweeks, Defendants did not compensate De Truff at time and one-half the full minimum wage rate for all of the overtime hours she worked.

- 24 -

147.   Defendants did not pay De Truff one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

148.   Defendants did not allow De Truff to retain all of the tips she earned.

149.   Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that De Truff earned.

150.   Defendants unlawfully redistributed part of De Truff's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms," DJs, and private room hostesses.

151.   Defendants made unlawful deductions from De Truff's wages, including, but not limited to, deductions for house fees, late fees/fines, missed work fees/fines, Dance Dollar cash out fees, and mandatory tip outs.

152.   Defendants required De Truff to purchase and wear a uniform that: (a) may not be worn as part of De Truff's ordinary wardrobe; (b) is not made of "wash and wear" materials; (c) cannot be routinely washed and dried with other personal garments; and (d) requires ironing, dry cleaning, daily washing, and/or other special treatment.  Defendants did not launder and/or maintain De Truff's mandatory uniform, pay De Truff the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse De Truff for uniform-related expenses.

153.   Defendants did not keep accurate records of wages or tips earned, or of hours worked by De Truff.

154.   Defendants failed to furnish De Truff with annual wage notices.

155.    Defendants failed to furnish De Truff with accurate statements of wages, hours worked, rates paid, and gross wages.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

156.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

157.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

158.    Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

159.    At all times relevant, Plaintiffs and the members of the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

160.    At all times relevant, Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

161.    At all times relevant, Defendants have been employers of Plaintiffs and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

162.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the FLSA Collective.

163.    Defendants have failed to pay Plaintiffs and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

164.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

165.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

166.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

167.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

168.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the FLSA Collective.

169.    Defendants have failed to pay Plaintiffs and the members of the FLSA Collective the premium overtime wages to which they are entitled under the FLSA for all hours worked beyond 40 per workweek.

- 27 -

170.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

171.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

172.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

173.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

174.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

175.    At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the members of the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

176.    At all times relevant, Plaintiffs and the members of the Rule 23 Class have been covered by the NYLL.

177.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

178.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

179.    Defendants have been required to pay Plaintiffs and the members of the Rule 23 Class the full minimum wage at a rate of (a) $7.15 per hour for all hours worked from September 17, 2007 to July 23, 2009; and (b) $7.25 per hour for all hours worked from July 24, 2009 to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

180.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

181.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

182.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

183.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

184.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 per workweek.

185.    Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and the members of the Rule 23 Class.

186.    Through their knowing or intentional failure to pay Plaintiffs and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

187.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Spread-of-Hours Pay
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

188.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

189.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

190.     Through their knowing or intentional failure to pay Plaintiffs and the members of the Rule 23 Class spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

191.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
**New York Labor Law –Tip Misappropriation**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

192.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

193.     At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees within the meaning of NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

194.     At all times relevant, each Defendant has been an employer within the meaning of the NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

195.     The wage payment provisions of Article 6 of the NYLL, and the supporting New York State Department of Labor Regulations, apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

196.     Defendants have unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

197.     Defendants have unlawfully retained part of the gratuities earned by Plaintiffs and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

198.     Defendants have required Plaintiffs and the members of the Rule 23 Class to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL, Article 6 § 196-d, and the supporting New York State Department of Labor Regulations.

199.     Through their knowing or intentional demand for, acceptance of, and/or retention of gratuities received by Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

200.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions from Wages**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

201.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

202.     Defendants have made unlawful deductions from the wages of Plaintiffs and the members of the Rule 23 Class, including, but not limited to, deductions for house fees, late fees/fines, missed work fees/fines, Dance Dollar cash out fees, and mandatory tip outs.

203.    The deductions made from the wages of Plaintiffs and the members of the Rule 23 Class were not authorized or required by law.

204.    The deductions made from the wages of Plaintiffs and the members of the Rule 23 Class were not expressly authorized in writing by Plaintiffs and the members of the Rule 23 Class, and were not for the benefit of Plaintiffs and the members of the Rule 23 Class.

205.    Through their knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

206.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Uniform Violations
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

207.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

208.    Defendants have required Plaintiffs and the members of the Rule 23 Class to purchase and wear a uniform consisting of clothing that is not ordinary basic street clothing selected by Plaintiffs and the members of the Rule 23 Class, and that may not be worn as part of Plaintiffs' and the members of the Rule 23 Class' ordinary wardrobe.

209.    Defendants have failed to launder and/or maintain mandatory uniforms for Plaintiffs and the members of the Rule 23 Class, and have failed to pay Plaintiffs and the members of the Rule 23 Class the required weekly amount for uniform maintenance in addition to the required minimum wage.

210.    Through their knowing or intentional failure to pay and/or reimburse Plaintiffs and the members of the Rule 23 Class for mandatory uniform-related expenses, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

211.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the costs of purchasing and maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### NINTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Wage Notices
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

212.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

213.    Defendants have willfully failed to supply Plaintiffs and the members of the Rule 23 Class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs and the members of the Rule 23 Class as their primary language, containing Plaintiffs' and the members of the Rule 23 Class' rate or rates of pay and  basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

214.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

215.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with wage notices, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

### TENTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Wage Statements**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

216.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

217.    Defendants have willfully failed to supply Plaintiffs and the members of the Rule 23 Class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

218.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

219.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all entertainers / dancers who are presently working, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at the Clubs.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.    Payment of service awards to Plaintiffs, in recognition of the services they have rendered and will continue to render to the FLSA Collective and Rule 23 Class;

F.       Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

G.       Unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated gratuities, unlawful deductions, uniform-related expenses, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H.       Statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with wage notices, or a total of twenty-five hundred dollars each, as provided for by NYLL, Article 6 § 198;

I.       Statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of twenty-five hundred dollars each, as provided for by NYLL, Article 6 § 198;

J.       Prejudgment and post-judgment interest;

K.       An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

L.       Reasonable attorneys' fees and costs of the action; and

M.       Such other relief as this Court shall deem just and proper.

- 37 -

Dated: New York, New York
       September 17, 2013

                              Respectfully submitted,


                              _____
                              Brian S. Schaffer

                              **FITAPELLI & SCHAFFER, LLP**
                              Joseph A. Fitapelli
                              Brian S. Schaffer
                              Eric J. Gitig
                              Andrew P. Kimble
                              475 Park Avenue South, 12th Floor
                              New York, New York 10016
                              Telephone: (212) 300-0375

                              **OUTTEN & GOLDEN LLP**
                              Justin M. Swartz
                              Amber C. Trzinski
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone: (212) 245-1000

                              *Attorneys for Plaintiffs and*
                              *the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against NEW YORK DOLLS and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

2.     By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

Melody Alyse Flynn
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against NEW YORK DOLLS and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

2.      By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


_____
Signature

Martina Antoinette de Truff
Full Legal Name (Print)