**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MELODY FLYNN and MARTINA ANTOINETTE DE TRUFF, on behalf of themselves and all others similarly situated,

        Plaintiffs,

   -against-

NEW YORK DOLLS GENTLEMEN'S CLUB a/k/a 59 MURRAY ENTERPRISES, INC., PRIVATE EYES GENTLEMEN'S CLUB a/k/a AAM HOLDING CORP, THREE B's HOSPITALITY GROUP a/k/a XYZ CORP., BARRY LIPSITZ, and BARRY LIPSITZ, JR.,

        Defendants.

Case No.:
13 Civ. 6530 (PKC) (RLE)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    I.      Factual Allegations ...................................................................... 2

    II.     Investigation and Discovery ......................................................... 2

    III.    The Litigation ............................................................................. 2

    IV.    Settlement Negotiations .............................................................. 3

    V.     Plaintiffs' Motion for Preliminary Approval ................................ 4

    VI.    Class Action Fairness Act Notice. ................................................ 4

SUMMARY OF THE SETTLEMENT TERMS ........................................................... 4

    I.      The Settlement Fund .................................................................... 4

    II.     Releases ........................................................................................ 5

    III.    Allocation Formula ..................................................................... 5

    IV.    Attorneys' Fees, Litigation Costs, and Service Awards ................ 5

    V.     Settlement Claims Administrator ................................................. 6

ARGUMENT ..................................................................................................................... 7

    I.      The Settlement Class Meets the Legal Standard for Class Certification. ............... 7

          A.    Numerosity ................................................................... 8

          B.    Commonality .................................................................. 8

          C.    Typicality ....................................................................... 10

          D.    Adequacy of the Named Plaintiffs .................................. 11

          E.    Certification is Proper Under Rule 23(b)(3). ................... 12

                1.    Common Questions Predominate ................................. 13

                2.    A Class Action is a Superior Mechanism for Settlement ............ 14

    II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ................................................ 15

          A.    The Proposed Settlement Is Procedurally Fair ................. 16

B.   The Proposed Settlement Is Substantively Fair ........................................ 17

    1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ........................................................................ 18

    2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........................................................................ 19

    3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ...................... 20

    4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ........................................................... 21

    5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................ 22

    6.   Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ............................................... 22

    7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................................... 23

III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law ................ 24

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Aboud v. Charles Schwab & Co.*,
No. 14 Civ. 2712, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ...........................................11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................13, 14

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78.................18, 21

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002) .........................................................................16

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................11, 17, 19, 20

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................................23

*Campos v. Goode*,
No. 10 Civ. 0224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ...........................................9

*Capsolas v. Pasta Res. Inc.*,
No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ...................................9, 11, 15

*Castagna v. Madison Square Garden, L.P.*,
No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011)....................................17, 21

*Ceka v. PBM/CMSI Inc.*,
No. 12 Civ. 1711, 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014)................................................19

*Clem v. Keybank, N.A.*,
No. 13 Civ, 789, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014) ...........................................13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................15, 17, 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)................................................................................8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)..................................................................................13

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................15

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................12, 15

*deMunecas v. Bold Food, LLC*,
    No. 09 Civ. 00440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010).........................9

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..................................................................................7

*Diaz v. Scores Holding Co.*,
    No. 07 Civ. 8718, 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ..........................22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ.
    304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).....16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................. *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................8

*Girault v. Supersol 661 Amsterdam, LLC*,
    No. 11 Civ. 6835, 2012 WL 2458172 (S.D.N.Y. June 28, 2012)..........................12

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................15

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)................................................................................14

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .........................10

*Hoffmann-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)............................................................................................24

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ....................17, 21

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)......................................................................21

*Johnson*, v. Brennan,
    No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011).....................................11, 20

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) ......................................................................................8

*Lovaglio v. W & E Hosp. Inc.*,
    No. 10 Civ. 7351, 2012 WL 1890381 (S.D.N.Y. Mar. 12, 2012) ............................................9

*Lovaglio v. W & E Hosp. Inc.*,
    No. 10 Civ. 7351, 2012 WL 2775019 (S.D.N.Y. July 6, 2012) ............................................12

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ......................................................................................24

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................19

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...........................................................................................10

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005)......................................................................................13

*Matheson v. T-Bone Rest., LLC*
    No. 09 Civ. 4212, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011).....................................12, 20

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................................................13

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ........................................................................................24

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................11

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ......................................................................................13

*Offs. for J. v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................................21

*In re Penthouse Executive Club Comp. Litig.*,
    No. 10 Civ. 1145, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014).............................................10

*Perez v. Allstate Ins. Co.*,
    No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ......................................... 11

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................................... 8

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ................................... 16, 24

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
    No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ......................................... 19

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................................... 10

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986) ........................................................................................... 13

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ......................................... 9

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................................... 15

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    No. 12 Civ. 4216, 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013) ......................... 10, 15, 17, 19

*Tiro v. Pub. House Investments, LLC*,
    No. 11 Civ. 7679, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ................................... 12, 15

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ......................................... 16

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ......................................... 14

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ......................................... 16

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ......................................... 11

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 15, 16, 17

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................20

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)..................................................................20

*Yuzary v. HSBC USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)..............................11, 12, 14

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)..................................................................22

**STATUTES**

28 U.S.C. § 1715(d) ..................................................................................................4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ................................................................... *passim*

**<u>INTRODUCTION</u>**

Melody Flynn and Martina Antoinette de Truff ("Plaintiffs") and Defendants New York

Doll's Gentlemen's Club a/k/a 59 Murray Enterprises, Inc., Private Eyes Gentlemen's Club a/k/a

AAM Holding Corp., Three B's Hospitality Group a/k/a XYZ Corp., Barry Lipsitz, and Barry

Lipsitz, Jr. (collectively "Defendants") (together with Plaintiffs, the "Parties") submit this

Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final

Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for

Final Approval").  The Parties' $4,300,000.00 settlement of this wage and hour class and

collective action satisfies all of the criteria for final approval.  The Parties seek an order: (1)

certifying the settlement class described below; (2) approving as fair and adequate the class-wide

settlement of this action, as set forth in the Joint Stipulation of Settlement and Release

("Settlement Agreement") attached as Exhibit A to the Declaration of Swartz in Support of

Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action

Settlement, and Approval of the FLSA Settlement ("Swartz Declaration");[1] and (3) approving

the FLSA Settlement.

On October 6, 2014, the Court took the first step in the settlement approval process by

granting preliminary approval, directing that notice be mailed to Class Members, and setting the

date for the final fairness hearing.  Swartz Decl. ¶ 25; Ex. B (Decl. of Christopher M. Walsh

("Walsh Decl.")) Ex. A (Notice).  Class Members have been notified of the terms of the

settlement, and Class Counsel has received numerous phone calls and emails from Class

Members who have reacted positively to the settlement terms.  *Id.* ¶ 36.  No Class Members have

objected to the settlement, and only one Class Member has requested exclusion.  Ex. B (Walsh

Decl.") ¶¶ 15-16.  With such overwhelming support, and for the reasons stated below, the Court

---

[1]       Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Factual Allegations

Plaintiffs and the members of the class ("Class Members" or "the Class"), were

entertainers (dancers) at New York Dolls Gentlemen's Club and/or Private Eyes Gentlemen's

Club, adult night clubs in New York City.  Swartz Decl. ¶ 15.  Plaintiffs alleged that Defendants

violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by,

among other things, paying Class Members no wages, unlawfully requiring them to pay "house

fees" and other fees, and unlawfully retaining a portion of Class Members' credit card and

"dance dollar" tips.  *Id.* ¶ 15.

### II.    Investigation and Discovery

Before filing, Class Counsel conducted a thorough investigation.  Swartz Decl. ¶¶ 12-14;

Declaration of Brian D. Schaffer in Support of Motion for Final Approval of Class Action

Settlement ("Schaffer Decl.") ¶ 5.  This included extensive legal research on the underlying

merits of the class claims, the proper measure of damages, the likelihood of class certification,

and Defendants' affirmative defenses.   Swartz Decl. ¶ 13; Schaffer Decl. ¶ 5.  Class Counsel

also conducted in-depth background interviews with Plaintiffs and other entertainers to

determine the hours they worked, the wages they were paid, the nature of their duties and

responsibilities, and other information relevant to their claims.  Swartz Decl. ¶ 14; Schaffer Decl.

¶ 5.

### III.   The Litigation

On September 17, 2013, Plaintiffs Melody Flynn and Martina Antoinette de Truff filed a

class and collective action against Defendants in the United States District Court for the Southern

District of New York, alleging that Defendants violated the Fair Labor Standards Act ("FLSA")

and the New York Labor Law ("NYLL") by, among other things, paying Class Members no wages, unlawfully requiring them to pay "house fees" and other fees, and unlawfully retaining a portion of Class Members' credit card and "dance dollar" tips.  Swartz Decl. ¶ 16.

On December 20, 2013, Plaintiffs filed a Motion for Conditional Certification pursuant to 29 U.S.C. § 216(b) of the FLSA.  *Id.* ¶ 17.

## IV.  Settlement Negotiations

In or around early January 2014, the Parties agreed to mediate this case and entered into a tolling agreement to explore a possible resolution of Plaintiffs' Claims.  Swartz Decl. ¶ 18. Defendants produced data showing the number of Class Members, pay, weeks worked, and location of employment.  Plaintiffs analyzed this data and constructed a class-wide damages model based on the data.  *Id.* ¶ 1.  In advance of the mediation, Plaintiffs submitted a detailed mediation statement including numerous exhibits that explained the claims, noted Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.  *Id.* ¶ 20; Schaffer Decl. ¶ 20.

On April 1, 2014, the Parties attended a full-day mediation session in New York with Martin F. Scheinman, Esq., a well-known and experienced mediator.  At the mediation, the Parties reached an agreement on the settlement amount and several other key terms.  During the next several months, with additional assistance from the mediator, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement") executed by the Parties on or about August 4, 2014.  Swartz Decl. ¶ 21.  At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  *Id.* ¶ 23.

## V.    Plaintiffs' Motion for Preliminary Approval

On August 5, 2014, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Notice of Proposed Class Action Settlement ("Motion for Preliminary Approval"), in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and provisionally certify the settlement class.  *Id.* ¶ 24.

On October 6, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that the court-approved Notice of Proposed be mailed to Class Members, and setting the date for the final fairness hearing.  *Id.* ¶ 25; Ex. B (Walsh Decl.) Ex. A (Notice).

## VI.     Class Action Fairness Act Notice.

The Claims Administrator sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA") on or around October 15, 2014.  *See* 28 U.S.C. § 1715(d); Walsh Decl. ¶ 4.  The 90-day CAFA notice period concluded on January 13, 2015.  *Id.*

## SUMMARY OF THE SETTLEMENT TERMS

## I.    The Settlement Fund

The Settlement Agreement creates a common fund of $4,300,000 (the "Settlement Fund"), which covers Class Members' awards, the cost of settlement administration, any Court-approved service payments, and Court-approved attorneys' fees and costs.  Swartz Decl. ¶ 26; Ex. A (Settlement Agreement) § 3.1(A).  Entertainers who performed at New York Dolls Gentlemen's Club and/or Private Eyes Gentlemen's Club from September 17, 2007 through April 1, 2014 and appear on the payroll may participate in the settlement.  *Id.* § 1.5.

II.     **Releases**

Class Members who do not timely opt-out will release Defendants from all wage and

hour claims under the NYLL arising from their employment at New York Dolls and/or Private

Eyes.  Ex. A (Settlement Agreement) § 3.5(A)(1).  Each Class Claimant who endorses and/or

deposits her settlement check shall release Defendants from all wage and hour claims under the

FLSA as well.  *Id.* § 3.5(A)(2).

III.    **Allocation Formula**

The average settlement award is $12,639.80.  Ex. B (Walsh Decl.) ¶ 8.  Each

participating Class Member will receive $2,525 for the first month during which she performed

as an entertainer at New York Doll's Gentlemen's Club or Private Eyes Gentlemen's Club.

Swartz Decl. ¶ 27; Ex. A (Settlement Agreement) § 3.4(B).  In addition, Class Members who

worked additional months during the Covered Period will be allocated 1 point for each additional

month.  Swartz Decl. ¶ 28; Ex. A (Settlement Agreement) § 3.4(B)(1). The Claims Administrator

will then divide the total number of points for each Class Member by the total number of points

for all Class Members to determine each Class Member's additional award, and add this to the

base award of $2,525 to determine each Class Member's portion of the "Net Settlement Fund."

Swartz Decl. ¶ 29; Ex. A (Settlement Agreement) §§ 1.16, 3.4(B).

Within twenty calendar days after the date of the Order Granting Final Approval,

Defendants will deposit funds sufficient to pay all Class Members' claims, any Court-approved

service payments, and any Court-awarded attorneys' fees and expenses.  *Id.* ¶ 31; Ex.  A

(Settlement Agreement) § 3.1(B).

IV.     **Attorneys' Fees, Litigation Costs, and Service Awards**

Class Counsel has filed a Motion for Attorneys' Fees and Reimbursement of Expenses

and a Motion for Approval of Service Awards simultaneously with this Motion.

V.      **Settlement Claims Administrator**

Class Counsel, with Defendants' input and approval, selected and retained Angeion Group as the Claims Administrator, an experienced wage and hour claims administrator, to administer the settlement.  Swartz Decl. ¶ 32; Ex. A (Settlement Agreement) § 3.1. The Claims Administrator's fees up to $30,000 will be paid out of the Settlement Fund, and any fees in excess of that amount shall be paid out of the Fee Award.  Ex. A (Settlement Agreement) § 3.1(A).

On November 5, 2014, the Settlement Claims Administrator mailed the Court-approved Notices to 269 Class Members whose names and addresses were provided by Defendants.  Ex. B (Walsh Decl.) ¶¶ 6, 11.  After the Notices were mailed, the Settlement Claims Administrator received 77 Notices returned as undeliverable by the Post Office without updated addresses.  *Id.* ¶ 13.  The Settlement Claims Administrator performed 73 address traces for these undeliverable Notices, and re-mailed 25 of them to Class Members for whom new addresses were located.  *Id.* ¶ 13.  There were a total of 48 Class Members for whom Proposed Notices were ultimately undeliverable.  *Id.* ¶ 13.

31.97 percent of the Class Members returned claim forms to participate in the settlement. Ex. B. (Walsh Decl.) ¶ 19.[2]  The Notice advised Class Members, among other things, that they could object to or exclude themselves from the settlement.  Ex. B (Walsh Decl.) Ex. A (Notice). No Class Member has objected to the Settlement.  Ex. B (Walsh Decl.) ¶ 16.   Only one Class Members has excluded herself from the settlement.  *Id.* ¶ 15.  After the Claims Administrator

---

[2]      This includes six Class Members who submitted claim forms after the December 20, 2014 Claim Bar Date.  Schaffer Decl. ¶¶ 49-55.  Three of the late claim forms were received in December shortly after the Claim Bar Date.  *Id.* ¶¶ 50-51, 54.  Two of the remaining Class Members had relocated and did not receive the claim form at their new addresses, and the remaining Class Member changed her address and did not receive the claim form until after the Claim Bar Date.  *Id.* ¶¶ 52-53, 55.  Plaintiffs respectfully request that the Court accept the late claim forms and permit these six Class Members to obtain relief from the Settlement.

issued Notice, Class Counsel received numerous phone calls and emails from Class Members

with questions about the settlement and from Class Members who reacted positively to the

settlement.  Swartz Decl. ¶ 36.

## ARGUMENT

### I.        The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the

settlement class can be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.

2006).  On October 6, 2014, the Court preliminarily certified a Settlement Class consisting of:

> [A]ll individuals, approximately 267 individuals, on payroll at New York Dolls
> Gentlemen's Club and/or Private Eyes Gentleman's Club from September 17, 2007
> through April 1, 2014, the names of whom appear on the class list attached hereto as
> Exhibit 2, including any individual who has signed an "Arbitration Agreement" or
> any other agreement containing an arbitration clause and/or class or collective action
> waiver.

Swartz Decl. ¶ 25; Ex. B (Settlement Agreement) § 1.5. The Court should now grant final

certification because the settlement meets all of the requirements of Federal Rule of Civil

Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court certify the settlement

class for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over
> any questions affecting only individual members, and that a class action is

7

superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in evaluating class certification." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.     Numerosity

Numerosity is satisfied when the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy the numerosity requirement because there are approximately 269 Class Members.  Swartz Decl. ¶ 34.

### B.     Commonality

Plaintiffs contend that the proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although "[t]he claims . . . need not be identical," they must share "common questions of fact or law." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe "the commonality requirement liberally."  *Frank*, 228 F.R.D. at 181.  Even where state and federal wage and hour claimants do "not share exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the

8

same or similar legal arguments." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012).

This case involves numerous common issues. Plaintiffs and Class Members all bring the identical claims that Defendants failed to pay them wages and took unlawful deductions from their gratuities in violation of state wage and hour laws. Other common issues include, but are not limited to, (a) whether Defendants failed to pay spread-of-hours wages; (b) whether Defendants required Class Members to share a part of their gratuities with employees in violation of the NYLL; (c) whether Defendants failed to maintain required records; (d) whether Defendants failed to post a notice of wage and hour laws; (e) whether Defendants failed to furnish Class Members with notice of hours worked, rates paid, gross wages, and the tip allowance claimed; (g) whether Defendants required Class Members to wear uniforms. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *2 (S.D.N.Y. Oct. 5, 2012) (finding commonality where defendants "allegedly us[ed] the equivalent of 4-5% of each shift's wine sales to pay [other employees'] salaries and [failed] to pay spread-of-hours pay"); *Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351, 2012 WL 1890381, at *2 (S.D.N.Y. Mar. 12, 2012) (commonality satisfied where workers raised minimum wage, overtime, spread-of-hours pay, tips misappropriation, and deduction claims); *Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010) (commonality satisfied where workers raised overtime, tip misappropriation, spread of hours, and uniform claims); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 2399345, at *1-2 (S.D.N.Y. Apr. 19, 2010) (commonality satisfied where workers raised, *inter alia*, tip misappropriation, spread-of-hours, and uniform claims).

C.     **Typicality**

Plaintiffs contend that typicality for purposes of a settlement class is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks and citation omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Defendants failed to pay Plaintiffs and Class Members minimum wage or spread-of-hours pay, made unlawful deductions from their wages, and required them to share tips with non-tip-eligible employees pursuant to the same company policy and pattern or practice. Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to pay them a proper minimum wage, made unlawful deductions from their wages, and required them to share tips with non-tip-eligible employees. Accordingly, Plaintiffs satisfy the typicality requirement. *See In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2014 WL 185628, at *3 (S.D.N.Y. Jan. 14, 2014) (typicality satisfied where plaintiffs' wage and hour claims "arose from the same factual and legal circumstances that form the bases of the class members' claims"); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2013 WL 4734818, at *3 (S.D.N.Y. Sept. 3, 2013) (same); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *3 (S.D.N.Y. Nov. 15, 2012).

D.      **Adequacy of the Named Plaintiffs**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney*, 443 F.3d at 268). Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members. *See Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *3 (S.D.N.Y. Apr. 30, 2013) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds); *Capsolas*, 2012 WL 1656920, at *2 (same).

Class Counsel also meet the adequacy requirement of Rule 23(a)(4). O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013); *see also Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *2-4 (S.D.N.Y. Nov. 4, 2014) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (certifying class action under New York Labor Law and appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at *2 (same); *Johnson, v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage

and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

Likewise, F&S has acted as lead counsel or co-counsel on dozens of wage and hour class and collective actions, including *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679, 2013 WL 2254551, at *3 (S.D.N.Y. May 22, 2013) ("Courts have repeatedly found F&S to be adequate class counsel in wage and hour class and collective actions"); *Yuzary*, 2013 WL 1832181, at *4 (appointing O&G and F&S as class counsel); *Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *2-3 (S.D.N.Y. July 6, 2012) (F&S has "extensive experience in litigating wage and hour class actions" and "achieved an excellent result for the class"); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835, 2012 WL 2458172, at *2, 3 (S.D.N.Y. June 28, 2012) (appointing F&S as class counsel because they "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); and *Matheson v. T-Bone Rest., LLC* No. 09 Civ. 4212, 2011 WL 6268216, at *7 (S.D.N.Y. Dec. 13, 2011) ("[O&G] and [F&S] have substantial experience prosecuting large-scale wage and hour class and collective actions"). *See also* Swartz Decl. ¶¶ 7, 10; Declaration of Brian S. Schaffer ("Schaffer Dec.") ¶¶ 30-31.

### E.    Certification is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). That Plaintiffs

easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.     Common Questions Predominate.

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (citation omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)).  Simply because a defense may arise and affect different class members differently does not defeat predominance.  *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check*, 280 F.3d at 138).  Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement is "designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted).

Here, Class Members' common factual allegations and legal theory – that Defendants violated federal and state law by failing to pay them the minimum wage, unlawfully retaining a portion of their tips, and requiring them to share their tips with non-tip-eligible employees – predominate over any variations among Class Members.  *See Clem v. Keybank, N.A.*, No. 13 Civ, 789, 2014 WL 1265909, at *4 (S.D.N.Y. Mar. 27, 2014) (finding plaintiffs' common factual

13

allegations and common legal theory predominate over any factual or legal variations among class members in wage and hour misclassification case); *Yuzary*, 2013 WL 5492998, at *4 (same); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "[t]his issue predominates over any individual calculations of overtime wages").

## 2.    A Class Action is a Superior Mechanism for Settlement.

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction, and Defendants' headquarters are based here. Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See*

14

*Capsolas*, 2012 WL 1656920, at *2 (class adjudication will conserve resources); *Damassia*, 250 F.R.D. at 161, 164. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims.

## II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). "Approval of a class action settlement is within the Court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'" *Tiro*, 2013 WL 4830949, at *4 (citation and internal quotation marks omitted). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (citation omitted); *accord Sukhnandan*, 2014 WL 3778173, at *4 (same) (citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85 (citation omitted); *accord Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support

approving the proposed settlement.

### A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *4 (S.D.N.Y. Aug. 16, 2011) (same). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, § 30.42 (3d Ed. 1995)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims and defenses, and after extensive arm's-length negotiations and information exchange between the Parties. Swartz Decl. ¶¶ 12-21; Schaffer Decl. ¶¶ 5-21. The Parties attended an all-day mediation with an experienced mediator on April 1, 2014, during which they engaged in a vigorous exchange regarding their respective claims and defenses. Swartz Decl. ¶ 21; Schaffer Decl. ¶ 21. At the conclusion of the mediation, the Parties reached agreement on

the settlement amount and several other key terms.  *Id.*  During the next several months, the

Parties negotiated the remaining terms of the settlement, which were memorialized in a formal

settlement agreement including all terms.  Swartz Decl. ¶ 21, Ex. A (Settlement Agreement).  At

all times during the settlement process, the Parties negotiated on an arm's-length basis.  Swartz

Decl. ¶ 23.  These arm's-length negotiations involved counsel and a mediator well-versed in

wage and hour law, raising a presumption that the settlement achieved meets the requirements of

due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Sukhnandan*, 2014 WL 3778173, at *4

(collecting cases and stating that "[t]he Parties' arm's-length settlement negotiations involved

counsel and a professional mediator, raising a presumption that the settlement achieved meets the

requirements of due process").

In addition, courts encourage early settlement of class actions, when warranted, because

early settlement allows class members to recover without unnecessary delay and allows the

judicial system to focus resources elsewhere.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. at 474-

75, 476 (granting final approval of pre-suit settlement of wage and hour class action); *Castagna*

*v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7,

2011) (commending parties for negotiating early settlement); *In re Interpublic Sec. Litig.*, No. 02

Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be

encouraged when warranted by the circumstances of the case).  The Parties here acted

responsibly in reaching an early pre-suit settlement.  *See In re Interpublic Sec. Litig.*, 2004 WL

2397190, at *12.

    **B.**    **The Proposed Settlement Is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the

substantive fairness of a class action settlement.  495 F.2d at 463.  The *Grinnell* factors guide

district courts in making this determination.  They are: (1) the complexity, expense and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id*. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

## 1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with approximately 269 Class Members and multiple claims. Swartz Decl. ¶ 34.

Further litigation would cause additional expense and delay. Extensive discovery would be required to establish liability and damages. Defendants would likely move to compel a large number of Class Members to arbitrate their claims on an individual basis. Plaintiffs would have to overcome Defendants' argument that these Class Members were subject to binding arbitration agreements and had waived their right to participate in a class or collective action. In addition, the Parties likely would file cross-motions for summary judgment on Defendants' defenses. If the Court denied the motions, a fact-intensive trial would be necessary to determine Defendants' liability and Plaintiffs' and Class Members' damages. A trial would be lengthy and complex and

would consume tremendous time and resources for all Parties and the Court.  Any judgment

would likely be appealed, further extending the litigation.  The settlement, on the other hand,

makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore,

the first *Grinnell* factor weighs in favor of final approval.  *See Sukhnandan*, 2014 WL 3778173,

at *5 (finding that the first *Grinnell* factor supported approval because "[l]itigation through trial

would be complex, expensive and long").

<h3 align="center">2.   <u>The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).</u></h3>

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be

taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,

No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notices sent to Class Members included an explanation of the allocation

formula and an estimate of each Class Member's award.  Ex. B (Walsh Decl.) Ex. A (Notice) ¶

4.  The Notice also informed them of their right to object to or exclude themselves from the

settlement and explained how to do so.  *Id.* ¶¶ 6, 8, 12-14.  No Class Member objected to the

settlement.  Ex. B (Walsh Decl.) ¶ 16.  Only one Class Member excluded herself from the

settlement.  *Id.* ¶ 15.  Class Counsel also received numerous phone calls and emails from Class

Members who reacted positively to the settlement.  Swartz Decl. ¶ 36.  This favorable response

demonstrates that the class approves of the settlement, which further supports final approval.  *See*

*Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014)

(approving settlement in wage and hour class action where only one of the approximately 360

class members requested to be excluded from the settlement); *Beckman*, 293 F.R.D. at 476

(approving settlement where eight of the 1,735 Rule 23 class members opted out of the

19

settlement); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

> **3.**     **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough informal discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Here, in addition to conducting extensive legal research on the merits of the case, Class Counsel conducted in-depth background interviews with Plaintiffs and other entertainers to determine the hours they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. Swartz Decl. ¶ 14; Schaffer Decl. ¶ 5. Defendants also produced data, in connection with settlement negotiations, showing the number of Class Members, pay, weeks worked and location of employment, which allowed Plaintiffs to analyze the data and construct a damages model. Swartz Decl. ¶ 19. The amount of informal discovery conducted here allowed the Parties to thoroughly assess the merits and risks of the case and to calculate damages. Therefore, this factor favors final approval. *See Beckman*, 293 F.R.D. at 475 (granting final approval of settlement after "an efficient, informal exchange of information" that allowed plaintiffs to "obtain[] sufficient discovery to weigh the strengths and weakness of their claims and to accurately estimate the damages"); *Matheson*, 2011 WL 6268216, at *5 (granting final approval in case where discovery consisted of informal information exchange); *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Frank*, 228 F.R.D. at 185 (approving settlement of

case "in the relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (early settlements should be encouraged when warranted by the circumstances of the case); *Castagna*, 2011 WL 2208614, at *6 (commending Plaintiffs' attorneys for negotiating early settlement).  The Parties here acted responsibly in reaching a settlement in the early stages of litigation.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to overcome Defendants' defenses that the tips Class Members

earned were not gratuities, but rather mandatory service charges which should be considered wages, among other defenses.

While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development.  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

5.     **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining certification and maintaining it through trial is also present.  The Court has not certified a Rule 23 Class, and the Parties anticipate that such a determination would be reached only after further discovery and exhaustive briefing.  In opposing class certification, Defendants would likely argue that individualized questions preclude class certification.  Settlement eliminates the risk, expense, and delay that permeates such processes.

In addition, the Court has not yet granted permission for Plaintiffs to proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination at a later date, after the close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).  Settlement eliminates the risk and delay inherent in this process.

6.     **Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).**

It is not clear whether Defendants could withstand a greater judgment.  In recent years, however, other similar establishments have filed for bankruptcy.  *See Diaz v. Scores Holding Co.*, No. 07 Civ. 8718, 2011 WL 6399468, at *1 (S.D.N.Y. July 11, 2011) (noting bankruptcy

petition of adult nightclub).   Even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

>   7.      **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

Defendants have agreed to pay a substantial amount, up to $4,300,000.  This represents considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Offs. for J. v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Each Class Member will receive a payment based upon the number of months she worked during the relevant period.  Class Members will each receive an average net settlement payment of approximately $12,639.80.  Walsh Decl. ¶ 8.  The maximum estimated net settlement award is $72,437.69, and the minimum estimated net settlement award is $2,525.00.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims.  They have brought their FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Reyes*, 2011 WL 4599822, at *6.  Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  If the proposed settlement reflects a reasonable compromise of contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Reyes*, 2011 WL 4599822, at *6.  In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth.  Swartz

Decl. ¶¶ 21, 23.  During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.  Because the Settlement Agreement resolves a clear and actual dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the class settlement; and (3) approve the FLSA settlement.

Dated:  January 26, 2015
      New York, New York

                            Respectfully submitted,
                            **OUTTEN & GOLDEN LLP**

                            /s/ Justin M. Swartz
                            Justin M. Swartz

                            Justin M. Swartz
                            Deirdre Aaron
                            3 Park Avenue, 29th Floor
                            New York, New York 10016
                            Telephone:  (212) 245-1000
                            Facsimile:  (212) 977-4005

                            **FITAPELLI & SCHAFFER, LLP**
                            Joseph A. Fitapelli
                            Brian S. Schaffer
                            Eric J. Gitig
                            475 Park Avenue South, 12th Floor
                            New York, New York 10016
                            Telephone: (212) 300-0375

                            *Attorneys for Plaintiffs and the Class and*
                            *Putative Collective*