**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELODY FLYNN and MARTINA ANTOINETTE DE TRUFF, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>    -against-<br><br>NEW YORK DOLLS GENTLEMEN'S CLUB a/k/a 59 MURRAY ENTERPRISES, INC., PRIVATE EYES GENTLEMEN'S CLUB a/k/a AAM HOLDING CORP, THREE B's HOSPITALITY GROUP a/k/a XYZ CORP., BARRY LIPSITZ, and BARRY LIPSITZ, JR.,<br><br>               Defendants. | Case No.:<br>13 Civ. 6530 (PKC) (RLE) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.  THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING
    ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT ....... 2

    A.  The *Goldberger* Factors Support an Award of Thirty Percent of the Fund ........... 5

    B.  Class Counsel's Time and Labor .......................................................................... 5

    C.  Magnitude and Complexity of the Litigation......................................................... 8

    D.  Risk of Litigation ............................................................................................... 10

    E.  Quality of Representation ................................................................................... 12

    F.  Fee in Relation to the Settlement ....................................................................... 13

    G.  Public Policy Considerations ............................................................................. 17

II.  NO CLASS MEMBER HAS OBJECTED TO CLASS COUNSEL'S
     FEE REQUEST ............................................................................................................ 18

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO
     CLASS COUNSEL OF THIRTY PERCENT OF THE SETTLEMENT FUND............. 19

CONCLUSION................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Phillips, Inc. v. Walling*,
  324 U.S. 490 (1945).................................................................................17

*Aboud v. Charles Schwab & Co.*,
  No. 14 Civ. 2712, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ............................................14

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010).................................................................................16

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................3

*Amador v. Morgan Stanley & Co., LLC*,
  No. 11 Civ. 4326 (S.D.N.Y.) ....................................................................10, 14, 18

*Asare v. Change Grp. N.Y., Inc.*,
  No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ............................................4

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981).................................................................................8

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................. *passim*

*In re Boesky Sec. Litig.*,
  888 F. Supp. 551 (S.D.N.Y. 1995).................................................................................19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................................3

*Buccellato v. AT&T Operations, Inc.*,
  No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ............................................21

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ................................................................21

*Ceka v. PBM/CMSI Inc.*,
  No. 12 Civ. 1711 (DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014)................................10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).................................................................................10

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
   May 11, 2010) ...................................................................................................9, 15, 22

*Clem v. Keybank, N.A.*,
   No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014) ............................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...........................................15

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) ........................................................................................21

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................................................................15, 21

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ..............................................................................................................17

*Diaz v. E. Locating Serv.*,
   No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .........................4, 16, 20, 22

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................................21

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................9, 13, 18

*Fujiwara v. Sushi Yasuda, Ltd.*,
   No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) .......................................9, 10

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .....................................13, 14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................................5

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................................... *passim*

*Hernandez v. Merrill Lynch & Co.*,
   No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...............................4, 15, 22

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................16, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ....................................................................................20

iv

*Karpus v. Borelli* (*"In re Interpublic Sec. Litig."*),
    Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...............4, 22

*Johnson v. Brennan*,
    No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................................2, 3, 4, 5

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)......................................15, 17

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................21

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................................21

*Masters, v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (S.D.N.Y. 2007) ...............................................................................................16

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)......................................................................................................2

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................17

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012).......................................................................................2

*Munir v. Sunny's Limousine Serv., Inc.*,
    No. 13 Civ. 1581 (VSB), slip op. (S.D.N.Y. Jan. 8, 2015)......................................................10

*N. Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)............................................21

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................7, 19

*Perez v. Allstate Ins. Co.*,
    No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)...........................................13

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .........................................3, 4

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996).............................................................................................8

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)...........................................3, 4, 5

*In re Rite Aid Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) .......................................................................21

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...............................2, 17

*Savoie v. Merch. Bank*,
    166 F.3d 456 (2d Cir. 1999)....................................................................................4, 19

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)......................3, 20

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ...............................................................................20

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .............2, 8, 13, 19

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d at 399 (S.D.N.Y. 1999)......................................................................17

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999).............................................................................3

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).........................12, 15

*Tiro v. Pub. House Investments, LLC*,
    No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ....................2, 7, 9

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013) ....................................................................................17

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...........................15

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)...................3, 4, 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).....................................................................................2, 3, 4

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................15

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..........................15, 16, 20, 21

*Zeltser v. Merrill Lynch & Co., Inc.*,
    No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014).............................14, 18, 20

## INTRODUCTION

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Outten & Golden LLP ("O&G") and Fitapelli & Schaffer, LLP ("F&S"), respectfully move for an award of attorneys' fees and costs in the amount of $1,290,000.00, or 30% of the Settlement Fund (the "Fund") that Class Counsel incurred in successfully prosecuting this action.

Over the past year and a half, Class Counsel has spent approximately 680 attorney, paralegal, and support staff hours investigating, litigating and settling this litigation.  Decl. of Justin M. Swartz in Support of Plaintiffs' Motion for Final Approval ("Swartz Decl.") ¶¶ 39, 42; Decl. of Brian Schaffer in Support of Plaintiffs' Motion for Final Approval ("Schaffer Decl.") ¶ 43.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $285,970.00.  Swartz Decl. ¶ 42.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved.  Swartz Decl. ¶ 48; Schaffer Decl. ¶ 46.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

---

[1]     For a detailed account of the factual and procedural background of this case, Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval.

## ARGUMENT

I.   **THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT**

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622-23 (S.D.N.Y. 2012); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role "must be adequately compensated for their efforts."  *Beckman*, 293 F.R.D. at 477 (citations omitted); *see also Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *15 (S.D.N.Y. Sept. 10, 2013); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *id.*; *Wal-Mart Stores*, 396 F.3d at 121; *Sukhnandan*, 2014 WL 3778173, at *9 (citing *McDaniel*); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622-23 (S.D.N.Y. 2012).

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive

2

to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (citation and internal quotation marks omitted); *Johnson*, 2011 WL 4357376, at *14; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008) (citations omitted); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007) (citation omitted); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (citation omitted).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Johnson*, 2011 WL 4357376, at *14 (internal quotation marks and citation omitted). *See also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (approving language from the Seventh Circuit that the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.") (quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (internal quotation marks omitted). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of*

*Elections*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  "While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method."  *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (citations omitted); *see also Diaz v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *7 (S.D.N.Y. Nov. 29, 2010).

Second, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and citation omitted); *see also Johnson*, 2011 WL 4357376, at *14; *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2 (internal quotation marks and citation omitted); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2 (citation omitted); *Velez*, 2007 WL 7232783, at *7 (citations omitted).  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *See Savoie v. Merch. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.") (citation omitted); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (the percentage method is "much simpler.").

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013)

4

(quoting *Savoie*, 166 F.3d at 461 n.4).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted); *see also Beckman*, 293 F.R.D. at 481-82; *Johnson*, 2011 WL 4357376, at *15; *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2. While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously.  *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## A.    The *Goldberger* Factors Support an Award of Thirty Percent of the Fund.

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

    (1)    the time and labor expended by counsel;
    (2)    the magnitude and complexities of the litigation;
    (3)    the risk of litigation;
    (4)    the quality of representation;
    (5)    the requested fee in relation to the settlement; and
    (6)    public policy considerations.

209 F.3d at 50 (internal quotation marks and ellipsis omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

## B.    Class Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $4,300,000 settlement.  Before filing, Class Counsel conducted a thorough investigation.  Swartz Decl. ¶¶ 12-14; Schaffer Decl.

¶ 5.  This included extensive legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of class certification, and Defendants' affirmative defenses.  Swartz Decl. ¶¶ 12-14; Schaffer Decl. ¶ 5.  Class Counsel also conducted in-depth background interviews with Plaintiffs and other entertainers to determine the hours they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  Swartz Decl. ¶ 14; Schaffer Decl. ¶ 5.

On September 17, 2013, Plaintiffs Melody Flynn and Martina Antoinette de Truff filed a class and collective action against Defendants in the United States District Court for the Southern District of New York, alleging that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by, among other things, paying Class Members no wages, unlawfully requiring them to pay "house fees" and other fees, and unlawfully retaining a portion of Class Members' credit card and "dance dollar" tips.  Swartz Decl. ¶ 16.

On December 20, 2013, Plaintiffs filed a Motion for Conditional Certification pursuant to 29 U.S.C. § 216(b) of the FLSA.  *Id.* ¶ 17.

In or around early January 2014, the Parties agreed to mediate this case and entered into a tolling agreement to explore a possible resolution of Plaintiffs' Claims.  Swartz Decl. ¶ 18. Defendants produced data showing the number of Class Members, pay, weeks worked, and location of employment.  Plaintiffs analyzed this data and constructed a class-wide damages model based on the data.  *Id.* ¶ 19.  In advance of the mediation, Plaintiffs submitted a detailed mediation statement including numerous exhibits that explained the claims, noted Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.  *Id.* ¶ 20; Schaffer Decl. ¶ 20.

On April 1, 2014, the Parties attended a full-day mediation session in New York with Martin F. Scheinman, Esq., a well-known and experienced mediator.  At the mediation, the Parties reached an agreement on the settlement amount and several other key terms.  During the next several months, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement") executed by the Parties on or about August 4, 2014.  *Id.* ¶ 21.  At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  *Id.* ¶ 24.

In performing these tasks, Class Counsel expended approximately 680 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $285,970.00.  Swartz Decl. ¶¶ 39, 42; Schaffer Decl. ¶ 48.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Swartz Decl. ¶ 40; Schaffer Decl. ¶ 40.  Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  Swartz Decl. ¶ 39; Schaffer Decl. ¶ 41.

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  Swartz Decl. ¶ 47; Schaffer Decl. ¶ 44; *see Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *Tiro*, 2013 WL 4830949, at *13; *Parker v. Jekyll & Hyde*

7

*Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010)

("[A]s class counsel is likely to expend significant effort in the future implementing the complex

procedure agreed upon for collecting and distributing the settlement funds, the multiplier will

diminish over time.").  In Class Counsel's experience, administering class settlements of this

nature and size requires a substantial and ongoing commitment.  Swartz Decl. ¶ 47; Schaffer

Decl. ¶ 44.  For example, since the Notices were mailed out, Class Counsel has responded to

numerous Class Members' questions about the terms of the settlement and the amount of their

settlement awards.  Swartz Decl. ¶ 47; Schaffer Decl. ¶ 44.  As is common in wage and hour

class actions, Class Counsel expects to respond to more Class Member inquiries after final

approval, especially after checks are issued.  Swartz Decl. ¶ 47; Schaffer Decl. ¶ 44.

### C.  <u>Magnitude and Complexity of the Litigation.</u>

The size and difficulty of the issues in a case are significant factors to be considered in

making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*,

912 F. Supp. 97, 100 (S.D.N.Y. 1996).  Courts have recognized that wage-and-hour cases

involve complex legal issues.  "FLSA claims typically involve complex mixed questions of fact

and law . . . .  These statutory questions must be resolved in light of volumes of legislative

history and over four decades of legal interpretation and administrative rulings."  *Barrentine v.*

*Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

"Among FLSA cases, the most complex type is the 'hybrid' action brought here, where

state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the

same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  *Sukhnandan*,

2014 WL 3778173, at *10.  "Justice is served and consistency and efficiency are achieved by

having the litigation in one forum because the same set of operative facts are being applied and

analyzed under both statutory frameworks."  *Beckman*, 293 F.R.D. at 479 (citing *Ansoumana v.*

*Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)).

This case hinged on several mixed questions of fact and law.  In particular, the parties disputed the facts surrounding Defendants' failure to pay wages, improper requirements to pay fees, and improper withholding of tips, which Plaintiffs alleged were violations of the FLSA and NYLL.  These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request.  *See id.* (size and difficulty of case, including mixed questions of fact and law, supported attorneys' fee award of one third of the fund); *see also Tiro*, 2013 WL 4830949, at *13 (awarding fees equal to one-third of the settlement fund where "[t]he numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request") (citation omitted); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund).  This added complexity also supports the fee request.  *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-7 (S.D.N.Y. May 11, 2010) (approving settlement and award of attorneys' fees representing one third of the fund in wage and hour class and collective action involving multiple job titles).

The complexity and risks of this case are different than those addressed by Judge Pauley in *Fujiwara v. Sushi Yasuda, Ltd.*, No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ("*Fujiwara*").  To the extent that the court in *Fujiwara* paints all wage and hour cases with the same brush, *see id.* at *4 ("[w]age and hour cases are not unduly complex"), Plaintiffs respectfully disagree.  Some wage and hour matters are much more complicated and riskier than others.

This case differs markedly from *Fujiwara* and the kinds of wage and hour cases described by Judge Pauley in *Fujiwara*.  Unlike in *Fujiwara*, where "obligations under the FLSA

and NYLL are relatively clear and liability turns on factual issues," *id.* at *7, here, where

Defendants contend that their compensation policies were lawful, including that the tips dancers

received are properly considered wages, class certification and liability were far from clear and

would have required thousands of hours of attorney time and tens of thousands of dollars in costs

to establish.  In addition, Plaintiffs would have had to overcome Defendants' argument that a

large number of Class Members were subject to binding arbitration agreements and had waived

their right to participate in a class or collective action.  Since *Fujiwara* other judges in this

district have continued to follow the common practice of awarding 30% of a settlement fund or

more in wage and hour actions where settlement is reached relatively early in the litigation.  *See,*

*e.g.*, *Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581 (VSB), slip op. at 3 (S.D.N.Y.

Jan. 8, 2015) (attached to the Swartz Decl. as Ex. F) (awarding attorneys' fees award of

$1,166,666.67, equaling one-third of the settlement fund, in wage and hour settlement); Swartz

Decl. Ex. E (Hr'g Tr. 16-17, Dec. 19, 2014, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ.

4326 (S.D.N.Y.)) (awarding attorneys' fees of one-third of the fund in wage and hour

misclassification case involving $4.2 million fund); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711

(DAB), 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding attorneys representing one-

third of the fund in settlement reached after only informal discovery and prior to dispositive

motions).

 **D.**     <u>**Risk of Litigation.**</u>

The risk of litigation is also an important factor in determining a fee award.  Uncertainty

that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of

an award.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by*

*Goldberger*, 209 F.3d 43.  "[D]espite the most vigorous and competent of efforts, success is

never guaranteed." *Id.* at 471.

The substantial risk of Class Counsel recovering no compensation after years of litigation supports Class Counsel's anticipated fee request. "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 479 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)) (internal quotation marks omitted).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Swartz Decl. ¶ 48. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Id.* Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.*

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' claims hinged on their ability to prove, among other things, that Defendants failed to pay wages, improperly required Plaintiffs and Class Members to pay fees, and improperly withheld tips. Plaintiffs would have to overcome Defendants' defense that that the tips Plaintiffs and Class Members earned were not gratuities, but rather mandatory service charges which should be considered wages, among other defenses. Plaintiffs also would have had to overcome Defendants' argument that a large number of the Class Members signed arbitration agreements waiving their right to participate in a class or collective action. A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Furthermore, when

11

taking on this case, Class Counsel faced the risk that the Court would not grant conditional certification under Section 216(b) of the FLSA or class certification under Rule 23, and such a determination would likely be reached only after extensive briefing.  Defendant would likely have argued, both in its opposition to conditional and class certification and on a decertification motion, that individual questions preclude certification.

Class Counsel takes on difficult cases like this one because we believe that they are important.  Swartz Decl. ¶¶ 49-50.  Class counsel takes seriously our responsibility to push the law in a direction favorable for employees.  *Id.* ¶¶ 49-50.  Class Counsel continues to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years.  *Id.* ¶¶ 49-50.  Like this case, we believed that each of these cases was meritorious but understood the risks.  *Id.* ¶¶ 49-50.  While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development.  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

## E.    Quality of Representation.

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (internal quotation marks omitted).

The recovery obtained was substantial.  Defendant agreed to pay a total of $4,300,000 to settle this litigation.  The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation.  Schaffer Decl. ¶ 38.  These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on

12

the merits, and losing on appeal, in addition to the risk of Defendant prevailing on a fluctuating workweek argument.

Here, Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $12,639.80.  Ex. B (Walsh Decl.) ¶ 8.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions.  Swartz Decl. ¶¶ 7, 10 (listing cases); Schaffer Decl. ¶ 30-31 (listing cases). Courts have found both O&G and Fitapelli & Schaffer to be adequate class counsel in numerous employment law class actions.  *See, e.g.*, *Perez v. Allstate Ins. Co*., No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *3, *8 (S.D.N.Y. July 31, 2014) (appointing F&S as class counsel).  Class Counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.  Swartz Decl. ¶ 38; Schaffer Decl. ¶ 37; *Velez*, 2007 WL 7232783, at *8 ("Lead Counsel's experience representing plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing Class Counsel's experience as one factor supporting an attorneys' fee award of approximately 40% of the fund).

### F.      Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount

of the settlement." *Beckman*, 293 F.R.D. at 481 (alteration in original) (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *5, *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven the modest size of the [$20 million] settlement"); *see also Beckman*, 293 F.R.D. at 481 (a 33% fee is not a windfall "because the requested amount is consistent with the norms of class litigation in this circuit" (quoting *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (internal quotation marks omitted)).

The size of the $4,300,000 settlement weighs in favor of granting the requested fee and cost award of 30% of the common fund.  Courts in this Circuit have routinely granted requests for one third of the fund in cases with settlement funds similar to or substantially larger than this one.  *See, e.g.*, Swartz Decl. Ex. E (Hr'g Tr. 16-17, Dec. 19, 2014, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326) (awarding attorneys' fees of one-third of the fund in wage and hour misclassification case involving $4.2 million fund); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (granting plaintiffs' request for an attorney fee award of one-third of the $3.8 million fund in wage and hour settlement); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *8-9 (S.D.N.Y. Sept. 23, 2014)  (awarding attorneys' fees of one-third of the fund in wage and hour misclassification class action); *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *1, *9-10 (S.D.N.Y. June 20, 2014) (awarding class counsel 33% fee award in $3,500,000 settlement of wage and hour misclassification class action); *Beckman*, 293 F.R.D. at 482 (awarding 33% attorneys' fee

award in $4.9 million settlement of wage and hour misclassification case ); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *1, 9-10 (S.D.N.Y. Oct. 2, 2013) (awarding attorneys' fee totaling 31.7% of $15,625,000 fund in wage and hour settlement); *Hernandez*, 2013 WL 1209563, at *1, *8-10 (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Davis  v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 182-87 (W.D.N.Y. 2011) (awarding one third fee in $42 million settlement); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one third of $7.675 million settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *2, *8-9 (awarding class counsel one third of $6 million settlement fund in wage and hour class action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

        While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases to prevent a windfall to plaintiffs' attorneys, the $4,300,000 fund in this case does not trigger such an issue.  *See Beckman*, 293 F.R.D. at 481 (33% fee award did not require the sliding scale approach in case involving $4.9 million settlement); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *1, *3-4 (E.D.N.Y. June 24, 2010) (noting that some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case involving $225 million settlement); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in . . . similar class action settlements of comparable value[,] . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *1, *10 ("Thirty percent of a larger settlement fund could constitute a windfall;

however, a settlement fund of [$15.175 million] does not create such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall.").  A fee of 30% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit."  *Yuzary*, 2013 WL 5492998, at *10 (internal quotation marks omitted).

Class Counsel's fee should be calculated as percentage of the full amount of money that the settlement made available to the class.  This is the best measure of what Class Counsel accomplished.  The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters*, *v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (S.D.N.Y. 2007).  "The value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus."  *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see Masters*, 473 F.3d at 437 ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus fees should be allocated based on "total funds made available, whether claimed or not."); *Diaz*, 2010 WL 5507912, at *8 (finding fee requested reasonable when it was "based on the entire settlement fund, including the amount that will revert to defendants").

As explained above, the *Goldberger* factors govern the percentage of the fund fee award, not the amount claimed by class members.  *See Diaz*, 2010 WL 5507912, at *8 ("[A]lthough the percentage-of-recovery here is based on the entire settlement fund, including the amount that will revert to defendants, rather than on the portion of the fund equal to the claims actually made, the fee requested is nevertheless reasonable in light of the *Goldberger factors*.").  It is no barrier that

the fee Class Counsel requests is more than the class members actually claimed.  "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery."  *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013), (quoting *Millea v. Metro-N. R.R. Co.,* 658 F.3d 154, 169 (2d Cir. 2011)).

## G. **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.  *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Beckman*, 293 F.R.D. at 477; *McMahon v. Olivier Cheng Catering & Events, LLC*, No.

17

08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010).  Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees helps to ensure that "plaintiffs' claims [will] . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions [.]"  *Id.*; *see also* Swartz Decl. Ex. E (Hr'g Tr. 16, Dec. 19, 2014, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326) (recognizing that "one-third is not too high for [wage and hour] cases like this . . . It's important that lawyers have incentives to bring cases like this.").

## II.   NO CLASS MEMBER HAS OBJECTED TO CLASS COUNSEL'S FEE REQUEST.

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class.  The Joint Stipulation of Settlement and Release ("Settlement Agreement"), which has been preliminarily approved by the Court, provides that "Plaintiffs may apply for no more than 30% of the Settlement Fund for professional fees, costs, and expenses."  Ex. A (Settlement Agreement) § 3.2(A).[2]  In addition, the Court-approved Notices that were sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve attorneys' fees plus litigation expenses and costs.  The fees would pay Class Counsel for investigating the facts, litigating the lawsuit, and negotiating and overseeing the settlement.  The Court will ultimately decide the amount that will be paid to Plaintiffs' and Class Members' attorneys for their services.

Ex. B (Walsh Decl.) Ex. A (Notice) ¶ 11.

No Class Member has objected to the requested attorneys' fees or costs.  *See* Ex. B (Decl. of Christopher M. Walsh ("Walsh Decl.")) ¶ 16.  The lack of objections to Class Counsel's fee and cost reimbursement request is some indication of the reasonableness of the requested award and weighs in favor of its approval.  *Zeltser*, 2014 WL 4816134, at *9 (lack of objections to class

---

[2]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

counsel's request for one third of the fund "provide[d] support for Class Counsel's fee request"); *Sukhnandan*, 2014 WL 3778173, at \*9 (same); *Beckman*, 293 F.R.D. at 478 (same).  The request for 30% of the Fund including expenses is reasonable and within the range approved by courts in similar cases.

### III.    THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF THIRTY PERCENT OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check[.]"  *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id*. (citation omitted); *see also Parker*, 2010 WL 532960, at \*2 (endorsing the *Goldberger* "cross check[]").  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks*, 2005 WL 2757792, at \*8.  In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50 (citation omitted).  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]"  *Id*.

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved."  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Parker*, 2010 WL 532960, at \*2; *Savoie*, 166 F.3d at 460.

Class Counsel's request for 30% of the Fund includes litigation costs and expenses.[3] Because litigation costs are more commonly awarded separately from fees, *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (internal quotation marks and citation omitted); *Diaz*, 2010 WL 5507912, at *8 ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses." (citations omitted)). Class Counsel's fee request (less costs), therefore, is actually only a request for 29.8% of the Fund.

This request for $1,282,484.27 in fees (30% of the fund less costs and expenses) is approximately 4.5 times "lodestar," which is well within the range of multipliers that courts have allowed. Swartz Decl. ¶ 42. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481-82 (granting 6.3 multipler); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Zeltser*, 2014 WL 4816134, at *10 (multiplier of 5.1 "falls within the range granted by courts"); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six.");

---

[3]     Here, Class Counsel's actual expenses of $7,515.73 were incidental and necessary to the representation of the Class. Swartz Decl. ¶ 43; Schaffer Decl. ¶ 48. These expenses include court fees, postage fees, transportation, photocopies, electronic research, and Plaintiffs' share of the mediator's fees. *Id.*, Ex. D (O&G Costs Summary); Schaffer Decl. ¶ 48. Furthermore, no Class Member has objected to the requested expense reimbursement. *See* Ex. B (Walsh Decl.) ¶ 16.

*Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage and hour class action);

*Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June

30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *N. Eng. Carpenters Health*

*Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass.

Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*,

586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health*

*Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of 6); *In re Rite*

*Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-91 (E.D. Pa. 2005) (awarding multiplier of 6.96); *In re*

*Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26,

2002) (noting that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by

courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371

(S.D.N.Y. 2002) (concluding that "modest multiplier" of 4.65 was "fair and reasonable");

*Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1, 169 (S.D.N.Y. 1991) (awarding multiplier of

8.74).

      Moreover, "[b]ecause class counsel will be required to spend significant additional time

on this litigation in connection with implementing and monitoring the settlement, the multiplier

will actually be significantly lower because the award includes not only time spent prior to the

award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation

marks and citations omitted); *see also Yuzary*, 2013 WL 5492998, at *11.  The multiplier that

Class Counsel seeks will diminish over time as Class Counsel spends additional time working on

this case, including preparing for and attending the final fairness hearing, answering class

member questions, answering questions from the claims administrator, and negotiating and

possibly litigating disagreements with Defendant about administering the settlement and

distributing the fund.  Swartz Decl. ¶ 47.  In light of the fact that Class Counsel will likely perform substantial work after the final approval hearing, which will further reduce the lodestar multiplier, Class Counsel's request is "even more reasonable than it appears at first glance." *Beckman*, 293 F.R.D. at 482; *see also Clark*, 2010 WL 1948198, at *9 (holding that fee request supported by fact that that it would compensate class counsel not only for time and effort expended but also "for time that they will be required to spend administering the settlement going forward.").

Finally, the lodestar cross-check should not discourage early settlements of class actions when they are warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *Beckman*, 293 F.R.D. at 474-76 (approving early settlement); *Hernandez*, 2013 WL 1209563, at *5 (endorsing early settlement of wage and hour class action); *Diaz*, 2010 WL 5507912, at *1, *3 (approving pre-suit settlement); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (explaining that early settlements should be encouraged when warranted by the circumstances of the case).  The parties here acted responsibly in reaching an early settlement.  *See Beckman*, 293 F.R.D. at 474-75; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

Class Counsel spent over 680 hours litigating and settling this matter.  Swartz Decl. ¶¶ 39, 42; Schaffer Decl. ¶ 43.  The time spent by Class Counsel is described in Class Counsel's Declarations and Class Counsel's summary of time records.  *See* Ex. C (O&G Fee Summary); Schaffer Decl. ¶ 43.  The hours worked by Class Counsel result in a lodestar of approximately $285,970.00.  Swartz Decl. ¶ 42.  Class Counsel's request for approximately 4.5 times their lodestar is reasonable, particularly in light of the excellent result achieved for the class.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order awarding $1,290,000 in attorneys' fees and expenses, which represents thirty percent of the fund and includes reimbursement of $7,515.73 in out-of-pocket costs that Class Counsel incurred in this action.

Dated: January 26, 2015
        New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

***Attorneys for Plaintiffs and the Class and Putative Collective***
